IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| | ) | |
| GARY FRANKLIN RINACA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 1:15-cv-1242- MSN |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

This matter is before the Court on the parties' cross Motions for Summary Judgment (Dkt. Nos. 10, 12). The parties have consented to the jurisdiction of the undersigned Magistrate Judge with respect to the Motions, *see* Joint Consent (Dkt. No. 15), which concern Plaintiff's appeal of the Social Security Administration's determination that he is not disabled within the meaning of the Social Security Act. For the reasons that follow, the Court will grant Defendant's Motion for Summary Judgment, deny Plaintiff's Motion, and affirm the Agency's decision.

### I.   Background

#### A.   Plaintiff's Disability

On April 25, 2011, Plaintiff applied for disability insurance benefits, claiming a disability onset date of January 10, 2010. *See* Tr. 13, 186-89; Df. Br. 2.  Plaintiff suffers from schizophrenia, as well as obesity caused by his treatment for that disorder. The parties do not dispute the existence of Plaintiff's disability, only its severity.

Plaintiff reports that he has heard voices since the death of his grandfather in 1990.

Tr. 451. Plaintiff's wife first began to notice his symptoms in 2005. Tr. 57. It appears from the record, however, that Plaintiff only began receiving treatment in 2007 following a violent episode that resulted in Plaintiff's brief institutionalization. *Id.*; *see also* Tr. 49. Since that time, Plaintiff has managed his schizophrenia with medication and regular psychiatric care.

The record includes Plaintiff's medical records, which chart the progress of Plaintiff's disorder from its diagnosis to a point shortly before the administrative hearing on Plaintiff's claim. The notes of Dr. Carl Hunt indicate that Plaintiff responded positively to treatment, and that while Plaintiff evinced "[d]isorganized thoughts" in May of 2008, Plaintiff's symptoms "significantly improved" by June of that same year. Tr. 489-90. In a series of reports between June of 2008 and July of 2011, Dr. Hunt consistently found that although Plaintiff's affect was restricted and his mood dysthymic, Plaintiff "appeared alert and oriented," "dressed appropriately," was "cooperative," and demonstrated "thought processes [that] were coherent and goal oriented without loose associations or flight of ideas." Tr. 471-89.

Dr. Hunt's evaluation of Plaintiff's condition during this period is corroborated by the notes of Dr. Joanna Lynch, who met with Plaintiff on December 28, 2010. Dr. Lynch recorded that Plaintiff "presented as well dressed and groomed appropriately," and that Plaintiff reported that he had "been doing well," "rarely hear[d] voices and experience[d] racing thoughts," and "denied the presence of any [other] medical conditions." Tr. 303.

Similarly, Dr. Jyoti Supanekar noted in a series of reports spanning December of 2011 to April of 2013 that Plaintiff's thought processes, affect, and behavior were within normal limits, Plaintiff's memory was not impaired, and Plaintiff exhibited "fair" judgment and insight, as well as "adequate" personal grooming. Tr. 455-68. During this time, Dr. Supanekar consistently noted that Plaintiff's condition appeared "stable," and assigned Plaintiff a score

of 65 on the Global Assessment of Functioning (GAF) scale. *See id*. Although the most recent edition of the Diagnostic & Statistical Manual of Mental Disorders has abandoned the GAF scale, *see* Report & Recommendation, *Persaud v. Colvin*, No. 12-cv-661 (E.D. Va. Oct. 2, 2013) at 8 n.1, previous editions of the Manual stated that GAF scores between 60 and 70 indicate only mild symptoms or functional limitations. *See* Diagnostic & Statistical Manual of Mental Disorders-Text Revision 34 (4th ed. 2000).

Most recently, the record includes the notes of a February 20, 2014 meeting between Plaintiff and Counselor Spring Richardson. Ms. Richardson noted that Plaintiff "was fairly groomed," appeared "alert, oriented . . ., coherent, and cooperative," and demonstrated a "logical and fluently expressed" train of thought. Tr. 500. She found further that Plaintiff "seem[ed] reasonably open and accessible" with "good range and responsiveness" of affect, and that Plaintiff "in the interview was able to concentrate adequately." *Id*. She noted that while Plaintiff "report[ed] slight auditory hallucinations," Plaintiff said he "is generally able to ignore them." *Id*.

The record also includes a self-evaluation submitted by Plaintiff, as well as a third party function report submitted by Plaintiff's wife. Plaintiff's self-evaluation states that he has "trouble dealing with stress, which causes [his] mind to race," and leaves him unable to "concentrate on one thing." Tr. 249. Plaintiff reports that he "hear[s] voices daily" which distract him and leave him feeling "paranoid." *Id*. The report submitted by Plaintiff's wife details significant difficulties maintaining Plaintiff's hygiene, and states that Plaintiff is largely unable to contribute to household chores. *See* Tr. 253-57. It further reflects that Plaintiff cannot handle his own finances, is socially isolated, limited in his ability to follow instructions, and is unable to concentrate because he "has too many things racing through his

mind." Tr. 258-60. The report states that at least on two occasions, Plaintiff was fired from a job for unusual behavior related to his schizophrenia. Tr. 260.

Finally, the record contains evidence showing that, notwithstanding his disorder, Plaintiff continued to work intermittently as a carpenter after the claimed onset of his disability. These jobs were generally short-lived, either because they were temporary, Plaintiff quit, or Plaintiff was fired. Plaintiff's most recent job, however, lasted five months and ended shortly before the administrative hearing held on Plaintiff's claim. *See* Tr. 36, 273. During that time, Plaintiff evidently worked full-time before he was eventually laid off.

### B.     Administrative Proceedings

Plaintiff received a hearing on his claim before an administrative law judge (ALJ) on March 13, 2014. At the hearing, much of Plaintiff's testimony concerned his employment following the onset of his alleged disability. In explaining why he had been fired from several jobs, Plaintiff stated that he was laid off due to "the quality of [his] work," or because he "wasn't productive enough." Tr. 41; *see also id.* (Plaintiff laid off because he was "building about one staircase an hour, which wasn't quite enough"). Asked why he had lost his job of five months shortly before the hearing, Plaintiff responded that it was "[b]ecause [he] made $3.00 more an hour than the guy that they hired after [him]," and "they just d[id]n't have enough work to keep everybody busy." Tr. 50.

Asked if he would return to work if given the opportunity, Plaintiff replied that he would because he "really lik[ed] [his] job" and "wanted to keep [his] job." Tr. 50. Plaintiff stated that he was already independently looking for work "less demanding, or not so physically demanding" as his work as a carpenter. Tr. 51. Plaintiff said that he was "happy with [his] career" and was hoping to "work for another 12 or 15 years," but that he was

4

having trouble because "with this economy and with my situation, being laid off, you know, I just don't know where to turn." Tr. 53.

Plaintiff's wife also offered testimony at the hearing, stating that Plaintiff had been unable to hold a job because often he was "not . . . able to understand," "pay attention," or "keep up" with the work, and had been fired from several jobs for behavior related to his schizophrenia. Tr. 56-57. She testified further that Plaintiff suffers from racing thoughts, has trouble following instructions, and is unwilling to maintain his own hygiene. Tr. 59-61. Among other things, Plaintiff's wife testified that Plaintiff would occasionally go weeks— even months—without showering, and had only recently started brushing his teeth with any regularity. Tr. 60-61. Finally, she stated that Plaintiff is socially isolated, and that his daily activities are extremely limited. Tr. 61-62.

At the hearing, the ALJ also solicited testimony from a vocational expert. The ALJ asked the expert whether work would be available to Plaintiff assuming that Plaintiff is capable of performing only "work that involves simple, routine, and repetitive tasks in entry level unskilled work that does not involve interaction with the general public, and only involves occasional interaction with coworkers and supervisors." Tr. 66-67. The vocational expert answered in the affirmative, concluding that "[t]here would be many jobs" available to Plaintiff at all exertional levels, including employment as an "industrial cleaner," "construction worker," and "packer sealer." Tr. 67-68. He added, however, that Plaintiff would be required to stay on task "at least 80 percent" of the time in order to remain competitive. Tr. 69.

On April 17, 2014, the ALJ issued an opinion holding that Plaintiff is not disabled within the meaning of the Social Security Act. Tr. 8-22. Employing the five-step inquiry

required by the Social Security Act, the ALJ first determined that Plaintiff's work activity following the onset of his alleged disability "did not rise to the level of substantial gainful activity" that would render Plaintiff ineligible for benefits, but was "probative as to the medical-vocational issues in this matter." Tr. 13.

The ALJ next determined that Plaintiff's schizophrenia and obesity constitute severe impairments. Tr. 14-15. He found, however, that Plaintiff's schizophrenia does not meet the requirements of 20 CFR part 404, subpart P, appendix 1, section 12.03B, which would result in an automatic determination of complete disability. Tr. 14. The ALJ reasoned that the record showed Plaintiff suffered only "moderate" limitations rather than the "marked" functional restrictions required by that regulation. Tr. 14-15.

Finally, the ALJ found that Plaintiff retained the "residual functional capacity to perform a full range of work at all exertional levels," but limited to "work involving simple and routine tasks in entry-level unskilled work, that does not involve interaction with the general public, and only involves occasional interaction with coworkers and supervisors." Tr. 15. The ALJ noted that Plaintiff's treating physicians consistently found Plaintiff's symptoms related to his schizophrenia to be mild, and that Plaintiff's medical records showed his "medications have been relatively effective in controlling [his] symptoms." Tr. 18-19. In light of those findings and Plaintiff's work activity, the ALJ discounted testimony taking a dimmer view of Plaintiff's abilities:

> [T]he record reflects work activity after the alleged onset date. Although that work activity did not necessarily constitute disqualifying substantial gainful activity, it does indicate that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported. The claimant's relatively benign physical examinations and mental evaluations belie allegations of disabling symptoms or functional limitations.

Tr. 20. The ALJ also assigned "great weight" to the reports of "State agency disability physicians and psychological consultants" that had reviewed the record and reached the same conclusion, finding the reports "consistent with and supported by the other evidence of record." Tr. 20-21.

Plaintiff appealed the ALJ's decision to the Appeals Council, which declined to review the case. Tr. 1-4. This appeal followed pursuant to 42 U.S.C. § 405(g).

## II.    Legal Standard

"In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record, and whether the proper legal standard was applied in evaluating the evidence." *Young v. Soc. Sec. Admin.*, No. 13-cv-63, 2014 WL 949040, at *3 (E.D. Va. Mar. 10, 2014); 42 U.S.C. § 405(g). Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Determining whether substantial evidence supports the Commissioner's decision requires that the court independently "examine the record as a whole," *Taylor v. Astrue,* No. 10-cv-382, 2011 WL 2437769, at *2 (E.D. Va. June 14, 2011), *report and recommendation adopted*, No. 10-cv-382, 2011 WL 2693495 (E.D. Va. July 11, 2011), including "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir.1974). Nonetheless, the court may not "undertake to re-weigh the conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir.1990). "While the standard is high, where the ALJ's determination is not supported by substantial evidence on the record, or where the ALJ has made [an] error of law, the district court must reverse the decision." *Taylor v. Barnhart*, No.

02-CV-739, 2001 WL 34614944, at *2 (E.D. Va. July 11, 2001), *aff'd*, 97 F. App'x 455 (4th Cir. 2004).

## III.   Discussion

Determining whether an applicant is eligible for disability insurance benefits under the Social Security Act entails a "five-part inquiry" that "asks: whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in Appendix I of 20 C.F.R. Part 404, subpart P; (4) the claimant can perform her past relevant work; and (5) the claimant can perform other specified types of work." *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). Here, the ALJ held at step five that Plaintiff retains the "residual functional capacity to perform a full range of work at all exertional levels," limited to "work involving simple and routine tasks in entry-level unskilled work, that does not involve interaction with the general public, and only involves occasional interaction with coworkers and supervisors." Tr. 15.

As Plaintiff does not challenge the legal standard applied by the ALJ in arriving at this conclusion, the Court's role is limited to assessing whether substantial evidence supports the ALJ's holding. *See Young*, 2014 WL 949040, at *3. Accordingly, Plaintiff is entitled to prevail only if the evidence in the record is such that no "'reasonable mind might accept [it] as adequate to support [the ALJ's] conclusion.'" *Prof'l Massage Training Ctr., Inc. v. Accreditation All. of Career Sch. & Colleges*, 781 F.3d 161, 174 (4th Cir. 2015) (quoting *Almy v. Sebelius*, 679 F.3d 297, 301 (4th Cir.2012)). Given the record in this case, Plaintiff has failed to meet that high bar.

The ALJ's opinion is supported by thorough citations to Plaintiff's medical records.

*See* Tr. 17-20. Those records reflect that the medical professionals treating Plaintiff uniformly described Plaintiff's symptoms as mild, and Plaintiff as, for example, "coherent and goal oriented without loose associations or flight of ideas," evincing a "logical and fluently expressed" train of thought, and "able to concentrate adequately." Tr. 303, 455-68, 471-89, 500. While it is clear that Plaintiff is not entirely free of symptoms—that Plaintiff, for example, still hears voices even when taking his medication—Plaintiff's treating psychiatrists consistently found that he is largely able to manage his schizophrenia.[1] The ALJ was amply justified in relying on this medical evidence in determining Plaintiff's residual capacity. *See* Tr. 17-20; *see also* 20 C.F.R. § 404.1527(c)(2) (findings of treating physician are given controlling weight when "not inconsistent with the other substantial evidence in [the] case record"). Given the above, the ALJ was also justified in his decision to give significant weight to the reports of state psychological consultants, which were based upon this compelling medical evidence. *See* Tr. 20-21.[2]

Moreover, the ALJ properly considered Plaintiff's recent work activity in evaluating Plaintiff's residual capacity. Tr. 13, 20. "The general rule is one amply supported by common sense: the Secretary can consider work done by the claimant after the alleged onset of disability as tending to show that the claimant was not then disabled." *Sigmon v. Califano*, 617 F.2d 41, 42-43 (4th Cir. 1980) (per curiam). Here, the ALJ found that Plaintiff's recent

---

[1]     Plaintiff argues that the medical evidence regarding Plaintiff's capacity is inconsistent because one report states Plaintiff is unable to concentrate for more than a few minutes at a time. *See* Pl. Br. 9; Hrg. Audio 10:06:00. The passage in question, however, is not a medical finding but merely Plaintiff's own "estimate[ ] [of] his attention span" as recorded by his treating psychiatrist. Tr. 452. In the same passage, Plaintiff's psychiatrist observes that Plaintiff's attention span was sufficient to permit Plaintiff to "appropriately respond to questions by this writer" during what was surely an interview lasting more than a few minutes. *Id.*

[2]     Plaintiff points out that the ALJ erroneously states that the reports in question were authored by "State agency disability physicians and psychological consultants," when in fact no "physicians" were involved in preparing the reports. Plaintiff, however, fails to explain why it is relevant that the "assessments were done by PHD [sic] psychologists and not by physicians." Pl. Rep. 2. Certainly Plaintiff does not claim that the psychologists who authored the reports were unqualified to render an opinion regarding Plaintiff's disorder, or that the absence of a physician's input undermined the reports' reliability.

employment demonstrated that Plaintiff's "daily activities have . . . been somewhat greater than [Plaintiff] has generally reported." Tr. 20. The ALJ relied upon this, as well as the medical records discussed above, to discount testimony from Plaintiff and his wife regarding Plaintiff's functional limitations—testimony that took a far less optimistic view of Plaintiff's capabilities. Tr. 17, 20.

While Plaintiff faults the ALJ for that decision, the ALJ's opinion identifies thoroughly and specifically what evidence in the record contradicted the testimony in question. Plaintiff does not dispute the presence of such evidence in the record, but rather takes issue with the weight the ALJ assigned it. This provides no basis for the Court to disturb the ALJ's conclusions. Any conflict between the record evidence and the testimony offered by Plaintiff and his wife was for the ALJ to resolve, and it is not the Court's place to "undertake to re-weigh the conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hays*, 907 F.2d at 1456.

The same is true of Plaintiff's claim that the ALJ erroneously found Plaintiff's schizophrenia fails to satisfy the criteria set forth in 20 CFR part 404, subpart P, appendix 1, section 12.03B. *See* Tr. 14. Here as well, the ALJ cited specific record evidence to support his conclusion that Plaintiff suffers only "moderate" functional limitations, as opposed to the "marked" limitations required by the regulation.[3] *See id*. This conclusion is further bolstered by the thorough findings set forth in the ALJ's discussion of Plaintiff's residual functional capacity. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 735 n.5 (10th Cir. 2005) (noting that "courts have upheld [the determinations of an ALJ regarding one step in the disability analysis] on the basis of evidence and findings set out in connection with other steps in the

---

[3]     A limitation is only "marked" if it is "more than moderate," although it need not be "extreme." *Myers v. Colvin*, 721 F.3d 521, 525 (8th Cir. 2013).

analysis"); *see also Smith v. Astrue*, 457 F. App'x 326, 328 (4th Cir. 2011).

Plaintiff further argues that even if he retains *some* residual capacity to work, the ALJ's determination that Plaintiff is able to work "at all exertional levels" is insupportable given Plaintiff's age and weight. Plaintiff asserts that, for example, Plaintiff may not be able to "perform very heavy work." Pl. Rep. 1. The ALJ, however, found that Plaintiff is not disabled within the meaning of the Social Security Act based on expert testimony that "[t]here would be many jobs" available to Plaintiff at *all* exertional levels. Tr. 67-68. Whether Plaintiff is able to perform "very heavy work" therefore has little bearing on the ALJ's decision, and so is immaterial to the question now before the Court. Regardless, as Plaintiff's counsel acknowledged at the hearing on this matter, Plaintiff failed to adduce any evidence of physical limitations that would affect his ability to work. Hrg. Audio 10:20:58. Plaintiff's recent assertion that his age and weight may cause such limitations cannot take the place of evidence. This is especially true given that the record indicates Plaintiff is physically able; as the vocational expert noted at the administrative hearing, Plaintiff continued to perform work at a "medium" to "heavy" capacity even after the onset of his alleged disability. Tr. 66.

Finally, Plaintiff argues that the ALJ failed to adequately address the issue of Plaintiff's obesity. Plaintiff reasons that because the ALJ found Plaintiff's obesity is a "severe" impairment, the ALJ was required to explore whether it limits Plaintiff's physical capacity to work. This argument, however, conflates the distinct legal issues of whether Plaintiff's impairment is "severe" and what impact it has on Plaintiff's residual capacity. At the administrative stage, Plaintiff bore the burden of proof on both issues. Asked at the hearing held on this matter whether Plaintiff had introduced any evidence showing that Plaintiff's obesity limits his physical capacity to work, Plaintiff's counsel conceded that "the

record is barren" of such evidence. Hrg. Audio 10:20:58. Again, the record tends to show that Plaintiff's physical capacity is largely unimpaired, and that Plaintiff is capable of relatively demanding physical labor. Given the above, the ALJ offered sufficient explanation by noting that Plaintiff's "relatively benign physical examinations . . . belie allegations of disabling symptoms or functional limitations." Tr. 20.

One issue raised in Plaintiff's brief merits some additional discussion. While the ALJ found that Plaintiff's recent work history undermines his claim of disabling symptoms, *see* Tr. 20, Plaintiff points out that one could easily draw a different inference: that having been fired from so many jobs demonstrates that Plaintiff's disability prevents him from retaining employment. This is a fair point. "A finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job he finds for a significant period of time." *Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986). The record does in fact show that Plaintiff was unable to retain employment as a carpenter for any significant length of time.

That does not mean, however, that Plaintiff would be unable to maintain other employment for a significant period of time. Plaintiff reported that he had been fired due to "the quality of [his] work" as a carpenter, and for not being "productive enough." Tr. 41. As to Plaintiff's productivity, Plaintiff stated that he retained the capacity to "build[ ] about one staircase an hour," even if that "wasn't quite enough" for one employer. *Id*. Moreover, Plaintiff testified that, shortly before the administrative hearing, he lost his job of five months not due to his disability but "[b]ecause [he] made $3.00 more an hour than the guy that they hired after [him]," and "they just d[id]n't have enough work to keep everybody busy." Tr. 50.

Indeed, Plaintiff himself expressed a belief that he might successfully retain "less demanding" work than carpentry. Tr. 51. This appears consistent with the mild functional limitations suggested by Plaintiff's medical records. In short, the Court is unable to say that, given the record in this case, Plaintiff's work history proves that Plaintiff is unable to retain employment.

**IV.     Conclusion**

While Plaintiff's situation is a difficult one, it is not the Court's role to substitute its own view of the evidence for that of the ALJ. With that in mind, the Court will deny Plaintiff's Motion for Summary Judgement, grant Defendant's Motion for Summary Judgment, and affirm the decision of the Social Security Administration denying Plaintiff's application for disability insurance benefits. An appropriate order will issue.


                                                        /s/
                                              Michael S. Nachmanoff
                                            United States Magistrate Judge

March 28, 2016
Alexandria, Virginia